IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAIICHI KOKU CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | No. 15-cv-2566 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| J.A. AERO, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant, J.A. Aero, Inc. ("J.A. Aero"), moves to dismiss [17] Counts II and III of the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). J.A. Aero argues that plaintiff, Daiichi Koku Co., Ltd. ("Daiichi"), fails to allege a past or present mistake of fact sufficient to support Daiichi Koku's claim for rescission of the Aircraft Purchase Agreement based either on mutual mistake and unilateral mistake. For the reasons that follow, this Court denies the motion.

**Background**

Daiichi is a Japanese air carrier based in Osaka, Japan. J.A. Aero is an Illinois corporation that sells and brokers sales of aircraft. In early 2012, Daiichi contacted J.A. Aero about the purchase of a single-engine airplane that could be modified for aerial ground photography for use in Japan. The parties began negotiations for the purchase of a 1997 Cessna Caravan 208, a single-engine airplane that could be modified for aerial ground photography with Serial No. 208-00269 and Registration No. N269JE.

On March 26, 2012, Daiichi made a $10,000 deposit for the aircraft with J.A. Aero. During a meeting on April 5, 2012, Daiichi alleges that it informed J.A. Aero that the aircraft would need to

1

be exported to Japan and be operated in Japan, which means it would be subject to Japan Civil Aviation Bureau ("JCAB") regulations. Daiichi also alleges that the parties discussed two prior attempts by Japanese aircraft companies to purchase airplanes from J.A. Aero that failed because the aircraft did not meet JCAB inspections and certifications.

On April 16, 2012, the parties entered into an Aircraft Purchase Agreement ("the agreement").[1] The total purchase price of the aircraft was $1,168,000.00 USD, to be paid as follows, pursuant to the agreement: a $10,000 deposit due upon signing; a first installment payment for the aircraft of $1,040,000.00 due April 30, 2012; a "Camera deposit" of $50,000 due May 15, 2012; and the balance of the purchase price, $68,000.00, upon delivery of the aircraft. (Dkt. 1 at ¶15). Between March 26, 2012, and March 22, 2013, Daiichi paid J.A. Aero a total of $1,251,592.50 for the purchase price of the aircraft plus payment for certain additional equipment and work on the aircraft, third-party services, and technical support obtained by J.A. Aero in connection with the work on the aircraft. (Itemized in Dkt. 1 at ¶ 17).

The agreement itemizes a number of "repairs and modifications" to the aircraft for J.A. Aero to complete prior to delivery of the aircraft to Daiichi, including: "an annual inspection with all airworthiness directives complied [sic] and in airworthy condition;" "the J.A. Aero Single Camera-hole installation with sliding door;" "an Export Certificate of Airworthiness to Japan." (Dkt. 1 at ¶14). Following execution of the agreement, J.A. Aero made certain modifications to the aircraft in order to comply with its obligations, including installing the camera port in the belly of the aircraft. Daiichi alleges on information and belief that these changes were made pursuant to Supplemental Type Certificate No. SA7687SW ("STC SA7687SW"). (Dkt. 1 at ¶18).

Following the work on the aircraft, Daiichi's representative, Tokuhisa Horioka, examined the aircraft and found thirty-one items that did not comply with STC SA7687SW. Without compliance

---

[1] The Aircraft Purchase Agreement is attached as Exhibit A to the Complaint (Dkt. 1-1).

with STC SA7687SW, the aircraft could not be certified as airworthy by the JCAB in Japan. (Dkt. 1 at ¶20). J.A. Aero engaged a "Designated Engineering Representative," DERS Group Services LLC, to address the first 19 of 31 items on the list. DERS issued a report on October 27, 2012, that stated that DERS has no technical objection to items 1-5 and 7-17 on the list, which, according to the Complaint, means that in DERS' view the deviations from the STC SA7687SW would not render the aircraft non-airworthy in the United States. (Dkt. 1 at ¶21). For items 6, 18, and 19, DERS recommended corrective action to the aircraft or to the documentation to rectify the discrepancies between the aircraft and the STC SA7687SW. (Dkt. 1 at ¶22). J.A. Aero billed Daiichi $17,900.00 for DERS services, which Daiichi paid on December 12, 2012.

According to the Complaint, Daiichi's representative Horioka continued to discuss with J.A. Aero the need to address the 31 items in a manner that would be acceptable to the JCAB before Daiichi could take delivery. Horioka explained to J.A. Aero that the JCAB would compare the aircraft against the STC SA7687SW and would not accept the DER's report as adequately addressing the aircraft's deviations from STC SA7687SW without confirmation from the Federal Aviation Administration ("FAA") to the JCAB that the deviations were acceptable pursuant to the terms of the Bilateral Aviation Safety Agreement Implementation Procedures for Airworthiness. (Dkt. 1 at ¶22). The parties continued to correspond between October 2012 and June 2013, but did not resolve the dispute over the 31 items. (Dkt. 1 at ¶28).

On June 3, 2013, Daiichi met with representatives of the JCAB in Osaka, Japan, to advise them of the 31 items. The JCAB directed Daiichi to discontinue negotiations with J.A. Aero about the 31 items and informed Daiichi that it would take the matter up with the FAA. On July 10, 2013, the JCAB sent a letter to the FAA regarding the alterations to the aircraft that would not meet JCAB

3

standards and requesting the FAA direct J.A. Aero to make the appropriate modifications. (Dkt. 1 at ¶30). [2]

On July 13, 2013, J.A. Aero's Vice President of Sales, Scott Frank, sent Horioka an email notifying Daiichi that it was in default of the purchase agreement, and that on August 1, 2013, J.A. Aero would begin offering the aircraft for sale and would return the purchase price to Daiichi less any outstanding balance plus the cost of any work needed to complete the sale and a 10% marketing fee. (Dkt. 1 at ¶31). In November 2013, Daiichi's Japanese counsel, Takashi Maruta, emailed Scott Frank of J.A. Aero, indicating Daiichi's desire to resolve the dispute and complete the purchase of the aircraft. Frank responded that the aircraft was now out of license, that additional maintenance was needed and that $137,000 in additional fees and costs (including Illinois sales tax) would need to be paid before Daiichi could take possession of the aircraft. (Dkt. 1 at ¶37). On December 10, 2013, Maruta responded that Daiichi would agree to pay the additional costs, but that the 31 items still needed to be addressed to certify the aircraft in Japan before Daiichi could take possession. Between December 10, 2013, and January 7, 2014, the parties continued to correspond regarding the 31 items. On March 18, 2014, counsel for J.A. Aero sent Daiichi a letter stating that Daiichi was now liable to J.A. Aero for an additional $264,187.78 if it wished to take possession of the aircraft. J.A. Aero also stated that it had not guaranteed that the aircraft could be operated in Japan. (Dkt. 1 at ¶43).

Daiichi filed a three Count Complaint, alleging breach of contract and seeks rescission of the contract based on either mutual mistake or unilateral mistake. J.A. moves to dismiss Counts II and III that seek rescission.

---

[2] The letter is attached as Exhibit B to the Complaint. (Dkt. 1-2).

**Legal Standard**

When reviewing a defendant's Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Detailed factual allegations are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the complaint's factual content allows the Court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Id.*

**Discussion**

J.A. Aero moves to dismiss Counts II and III of the Complaint, arguing first that the alleged "mistake" is one of law and therefore is not a proper basis for rescission. Alternatively, J.A. Aero argues that if this Court construes the mistake as one of fact, this Court should dismiss because it is not of a present or past fact, but of a future prediction. The Court will address each argument in turn.

To state a claim for rescission of a contract based on either mutual mistake or unilateral mistake, Daiichi must establish that "(1) the mistake is of a material nature; (2) the mistake is of such consequence that enforcement is unconscionable; (3) the mistake occurred notwithstanding the exercise of due care by the party seeking rescission; and (4) rescission can place the other party in status quo." *Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 944 (N.D. Ill. 2013) (quoting *Siegel v. Levy Org. Develop. Co., Inc.*, 153 Ill. 2d 534, 607 N.E. 2d 194, 199, 180 Ill. Dec. 300 (1992) (unilateral mistake); *John Burns Const. Co. v. Interlake, Inc.*, 105 Ill. App. 3d 19, 433 N.E. 2d 1126, 1130, 60 Ill. Dec. 888 (1st Dist. 1982) (mutual mistake)). The only issue here is whether there is a mistake appropriate for a claim of rescission. The other elements are not at issue.

J.A. Aero first argues that the alleged mistake at issue is one of law and a mistake of law is not a basis for rescission of a contract. *Harbaugh v. Hausman*, 210 Ill. App. 3d 715, 716, 569 N.E.2d 523, 155 Ill. Dec. 342 (4th Dist. 1991); *Heath v. A.B. Dick Co.,* 253 F.2d 30, 35 (7th Cir. 1958). "A mistake of [law] arises when a person enters into a contract not fully understanding the legal ramifications of the contract." *Harbaugh*, 210 Ill. App. 3d at 722. The fairness of the transaction remains a consideration for the court evaluating a claim for rescission whether the alleged mistake is one of law or fact. *Id.* at 723.

Here, J.A. Aero argues that the alleged mistake is the FAA's approval of the modifications to the aircraft and the FAA's determination that the aircraft is airworthy would in the future render the aircraft airworthy by the JCAB's standards. Daiichi alleges the mistake of fact is that the agreement provided for the purchase of an aircraft airworthy for use in Japan. This Court agrees. J.A. Aero's framing of the issue contorts the allegations in an attempt to construe the mistake as one of law. At its core, the allegations in the complaint assert that Daiichi sought to purchase an aircraft from J.A. Aero for use in Japan. In order for the aircraft to be operable in Japan it needed to be airworthy by Japanese standards. This is very clearly a mistake of fact, whether mutual or unilateral.

J.A. Aero also argues that, even if the mistake is one of fact, it is not a mistake of a present or past fact and is therefore not a basis for rescission. "The erroneous belief must relate to the facts as they exist at the time of the making of the contract. A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as that word is defined here." *Pagano v. Villardito*, 1983 U.S. Dist. LEXIS 13624, *6-7 (N.D. Ill. 1983). In *Pagano*, the court found the mistake related to a future prediction since the contract was for the sale of a business and the mistake was that the new owner would be able to retain a particular client. *Id.* at *8. Similarly, in *United States v. Southwestern Electric Cooperative Inc.*, 869 F.2d 310, 314 (7th Cir. 1989), the court rejected a claim for rescission of a contract involving the construction of a power plant where the cost were estimates.

6

There, the court found the alleged mistake, that the final cost of the power plant far exceeded the estimates, was a projection. *Id.*

Here, the alleged mistake is not a prediction or error of business judgment like a poor investment. Daiichi alleges that it sought to purchase an aircraft to operate in Japan and without meeting JCAB standards the aircraft would not be airworthy in Japan. Therefore, Daiichi mistakenly believed that the aircraft would be airworthy in Japan and that it was purchasing an aircraft certified for such use. Accordingly, this Court finds that Daiichi has stated a claim for rescission based on mutual mistake or unilateral mistake of fact.

**Conclusion**

Based on the foregoing discussion, this Court denies J.A. Aero's motion to dismiss Count II and Count III of the Complaint.

IT IS SO ORDERED.

Date: October 9, 2015

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge